**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ABBOTT LABORATORIES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 05 C 5373 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| SANDOZ, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Abbott Laboratories ("Abbott") brought suit against Sandoz, Inc. ("Sandoz") in 2005 alleging that Sandoz was about to market a generic extended release form of the antibiotic drug, clarithromycin, thereby infringing upon Abbott's U.S. Patent Nos. 6,010,718 (the "'718 patent"), 6,551,616 (the "'616 patent") and 6,872,407 (the "'407 patent") relating to its BIAXIN ® XL product. Abbott sought a declaratory judgment that such acts would constitute infringement. On June 25, 2007, Abbott filed an amended complaint that included allegations of willful infringement against Sandoz because during the time since the filing initial complaint, Sandoz actually launched its product. Before the Court now are Sandoz's Rule 12(b)(6) Motion to Dismiss Plaintiff's Claims of Willful Infringement or in the Alternative, Rule 12(c) Motion For Judgment on the Pleadings. The parties have since dismissed their respective claims and counterclaims regarding the '407 patent and Abbott has dismissed its claim that Sandoz's infringement of the '616 patent was willful; thus leaving only the '718 patent at issue in Sandoz's motion. For the reasons stated below, Sandoz's motion is GRANTED.

**I.    BACKGROUND**

-1-

In June 2005, this Court issued a preliminary injunction against a generic competitor, Teva Pharmaceuticals, Inc. ("Teva"), based on its alleged infringement of claims 2, 4 and 6 of the '718 patent. *Abbott Lab. v. Andrx Pharm., Inc.*, No. 05 C 1490, 2005 WL 1323435 (N.D.Ill. June 3, 2005) (vacated by *Abbott Lab. v. Andrx Pharm., Inc.*, 452 F.3d 1331 (Fed. Cir. 2006)). In November of 2005, this Court also issued a preliminary injunction against another generic competitor, Andrx Pharmaceuticals, Inc. ("Andrx"), based on its alleged infringement of the '718 patent (as well as the '616 and '407 patents). *Ranbaxy Lab. Ltd. v. Abbott Lab.*, No. 04 C 8078, 05 C 1490, 2005 WL 3050608 (N.D.Ill. November 10, 2005). In June 2006, the Federal Circuit vacated the preliminary injunction order entered against Teva (the "*Teva* decision") in *Abbott Lab. v. Andrx Pharm., Inc.*, 452 F.3d 1331. That Court held that Teva had raised substantial questions as to the validity of claim 2, 4 and 6 of the '718 patent. *Id.* at 1347.

In December 2006, Sandoz launched its own generic product on the market. Abbott subsequently moved for a TRO against Sandoz based on claims 2, 4 and 6 of the '718 patent. On December 15, 2006, this Court denied Abbott's request for a TRO based upon the practical effect of the Teva decision and the limited record then before the Court. In January 2007, the Federal Circuit upheld the preliminary injunction entered against Andrx (the "*Andrx* decision"). *Abbott Lab. v. Andrx Pharm.*, 473 F.3d 1196 (Fed. Cir. 2007). That Court expressly disavowed any preclusive effect of the *Teva* decision on Abbott's ability to seek a preliminary injunction against Andrx. *Id.* at 1207. Without discussing validity, that Court also affirmed this Court's preliminary finding that Abbott showed a likelihood of success in proving infringement of claims 1, 4, and 6 of the '718 patent.

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true. Fed. R. Civ. P. 12(b)(6). The purpose of a 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). A complaint should not be dismissed pursuant to Rule 12(b)(6) unless it fails it provide fair notice of what the claim is and the grounds upon which it rests or it is apparent from the face of the complaint that under no plausible facts may relief be granted. *St. John's United Church of Christ v. City of Chicago*, 2007 WL 2669403, at *7 (7th Cir. September 13, 2007) (citing *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955 (May 21, 2007). All reasonable inferences are to be drawn in favor of the plaintiff. *Gastineau v. Fleet Mortg. Corp.,* 137 F.3d 490, 493 (7th Cir. 1998) (citation omitted).

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is only appropriate where "it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." *Brunt v. Serv. Employees Intern. Union*, 284 F.3d 715, 718-19 (7th Cir.2002). If the pleadings do not resolve all of the factual disputes, a trial is more appropriate than a judgment on the pleadings. *See* Wright & Miller, 5A *Federal Practice and Procedure: Civil* 2d § 1367 p. 514 (1990). As in a 12(b)(6) motion to dismiss, in deciding a motion for judgment on the pleadings, the court views the facts in the light most favorable to the non-moving party. *Id*. § 1368 pp. 518-19 (1990). All of the well-pleaded allegations in the non-moving party's pleadings are taken as true. *Gillman v. Burlington Northern R.R. Co.*, 878

F.2d 1020 (7th Cir. 1989). All reasonable inferences from these facts are also given to the non-movant. *National Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357 (7th Cir. 1987).

**III.   DISCUSSION**

Willfulness is a question of fact. *Pall Corp. v. Micron Separations*, 66 F.3d 1211, 1221 (Fed. Cir. 1995). In *In re Seagate Tech., LLC,* the Federal Circuit held that at a minimum, a finding of willfulness requires a showing of objective recklessness by presentation of clear and convincing evidence. 497 F.3d 1360, 1371 (Fed. Cir. 2007) (citing *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2215 (U.S. June 4, 2007). The Court explained that objective recklessness means an infringer disregarded "an objectively high likelihood that its actions constituted infringement of a valid patent." *Seagate*, 497 F.3d at 1371.

At the time Sandoz launched its product on the market, there was an appellate judicial opinion stating that the claims of the patents at issue here were susceptible to invalidity and unenforceability challenges. *Abbott Laboratories v. Andrx Pharmaceuticals, Inc.*, 452 F.3d 1331 (Fed. Cir. 2006). Sandoz argues that its reliance on that decision was objectively reasonable as a matter of law. As for its failure to halt its activities once the Federal Court issued the *Andrx* opinion in January of this year, Sandoz contends 1) that Court's opinion did not touch upon the substance of any validity issues in this litigation, and 2) Sandoz relies on different defenses and arguments than those presented in the *Teva* decision.

According to Sandoz, it was objectively reasonable as a matter of law because it relied on the Federal Circuit's holding in the *Teva* decision that Teva had raised substantial questions as to the validity of claim 2, 4 and 6 of the '718 patent as a basis for it to launch its product in December 2006. The Federal Circuit has instructed courts that when determining whether

infringement was willful, "the primary consideration is whether the infringer, acting in good faith and upon due inquiry, had sound reason to believe... that the patent (at issue) was not infringed or was invalid or unenforceable, and would be so held if litigated." *SRI Intern., Inc. v. Adv. Tech. Lab., Inc.*, 127 F.3d 1462, 1464-65 (Fed. Cir. 1997). The *Teva* decision, though only an appeal of an interlocutory order, would invariably lead a reasonable potential infringer to believe that there was a very strong probability that the claims of the '718 patent were invalid. An opinion by the Federal Circuit, the Court of Appeals with exclusive jurisdiction over patent law issues, that substantial questions of validity as to certain claims existed, certainly provides an objectively low likelihood that marketing a product that reads on those same claims would be infringing upon a valid patent.

However, Abbott asserts that Sandoz's reliance on the *Teva* decision was reckless for several reasons. First, Abbott first cites the limited record on which the *Teva* decision was reached. Second, Abbott points to the fact that the *Teva* court itself acknowledged its opinion did not resolve the ultimate question of validity. Third, Abbott asserts that the *Teva* decision was based on a misreading of the prior art and that Sandoz knew as much. Abbott is incorrect that Sandoz's reliance on the *Teva* decision was objectively reckless.

The limited nature of the record before the *Teva* court has little, if any, impact on whether Sandoz's reliance on its opinion was reasonable. In its decision, the *Teva* court engaged in a thoughtful and substantial analysis of the '718 claims read against the prior art of the '422 publication and the '190 patent utilizing the evidentiary materials before it. Nor does the interlocutory nature of that decision render reliance on it unreasonable. As *Seagate* explains, when determining objective recklessness, the focus is on the *likelihood* that an infringer's actions

constitute infringement of a valid patent. 497 F.3d at 1371. In the area of patent infringement, a showing of objective reasonableness (which negates the existence of recklessness) does not require that the would-be infringer know conclusively, i.e.- with one hundred percent certainty, that his actions are legitimate. Instead, the infringer need only show there was a reasonable basis for him to believe his actions were legitimate. *SRI Intern., Inc.*, 127 F.3d at 1464; *see also* 3A Fed. Jury Prac. & Instr. § 158.94 (5th ed.). Thus, the *Teva* decision did not have to be final and conclusive for Sandoz to rely on it as a reasonable basis for concluding its actions did not constitute infringement of a valid '718 patent.

Abbott makes much of Sandoz's continued market presence beyond the filing date for its motion for a preliminary injunction. According to Abbott, by the time it filed for the preliminary injunction, it was clear, or at least should have been, that there was no reasonable basis for one to believe the '718 patent was invalid. Abbott is correct that case law instructs patent infringement is a continuing tort that can become willful as circumstances change. *Pall Corp. v. Micron Separations*, 66 F.3d 1211, 1222 (Fed. Cir. 1995). However, case law also provides that a party may continue to manufacture and market an allegedly infringing product while it presents what in good faith it believes to be a legitimate defense without risk of being found on that basis alone a willful infringer. *Gustafson, Inc. v. Intersys. Indus. Products, Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990). In sum, the ability of an infringer to demonstrate a reasonable basis for her belief that her actions did not infringe upon a valid patent is not magically eviscerated by time. Without regard for time, the question is (and remains) whether the *Andrx* opinion and/or Abbott's evidentiary materials rendered Sandoz's reliance on the Teva decision unreasonable. They did not.

The first reason why Sandoz was not unreasonable in relying on the *Teva* decision after the *Andrx* decision was published is that the latter did not touch upon any invalidity arguments presented in the former. Instead, the *Andrx* decision focused on an estoppel argument and claim construction. Secondly, Sandoz argues that the '718 patent is obvious in light of the '422 publication and the '190 patent. Even this Court's opinion that was the subject of the appeal in the *Andrx* decision did not discuss obviousness in light of the '422 publication and the '190 patent. *See Ranbaxy Labs., Ltd. v. Abbott Labs.*, No. 04 C 8078, No. 05 C 1490, 2005 U.S. Dist. LEXIS 27753 (N.D. Ill.). Thus, Sandoz is correct that it offers new grounds for invalidity not previously commented on by any court.

Lastly, Abbott contends that the *Teva* decision was incorrect, that Sandoz knew it, thereby rendering Sandoz's decision to rely on it objectively reckless. For this argument to succeed, Abbott would first have to demonstrate that the Federal Circuit was incorrect. That is simply not possible, which is precisely why this Court chose not to deviate from the *Teva* decision in the TRO proceedings. The question before the *Teva* court was whether, in light of the evidence presented, there was a substantial question as to the validity of the '718 patent, not whether the patent was actually invalid. In its TRO opinion, this Court merely attempted to explain that even though the *Teva* decision did not have a preclusive effect upon subsequent litigation between the parties, this Court needed more evidence to rule contrary to the *Teva* court on the issue of invalidity due to obviousness.

In response to that, Abbott offered evidence in the preliminary injunction proceedings that was not previously made available to the *Teva* court.[1] While this Court's preliminary injunction opinion regarding obviousness was informed by the "new" evidence and this Court concluded differently than the *Teva* court, that does not necessarily mean this Court can assume the Federal Circuit would not have found a substantial question of invalidity had the evidence from the preliminary injunction proceedings before it. Nor can this Court assume the *Teva* court was incorrect in its holding. The validity arguments and the evidence in support of them are extremely technical and involve an art not within the general sphere of ordinary knowledge. Therefore, this Court does not presume its opinion to be infallible nor does it presume to possess the expertise and resources of the Federal Circuit. In sum, Abbott is unable to demonstrate that the *Teva* court was incorrect in its holding.

## IV. CONCLUSION

For the foregoing reasons, this Court GRANTS Sandoz's Rule 12(b)(6) Motion to Dismiss Plaintiff's Claims of Willful Infringement or in the Alternative, Rule 12(c) Motion For Judgment on the Pleadings.

---

[1] Such evidence included a declaration from an expert statistician, Dr. Weiner, explaining it was not possible for a person skilled in the art to utilize DFL from the '190 patent formulations to create the '718 invention because of the differences in which the underlying variables used to calculate DFL ($C_{max}$, $C_{min}$, and AUC) were themselves calculated; that the '190 patent's $C_{24}$ value was not equivalent to the '718 patent's $C_{min}$ value and an ordinary person skilled in the art would not threat those different C values as interchangeable; and finally, U.S. Patent 6,068,859, the domestic counterpart of the WO '422 publication, which taught that many of the controlled release formulations of that patent were found to exhibit less bioavailability than their respective immediate release formulations once in vivo data was gathered.

Dated: **December 4, 2007**

                                                    Enter: /s/ David H. Coar
                                                    David H. Coar
                                                    United States District Judge